CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

4/20/2023

LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
     DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| LIBERTY INSURANCE CO.,<br><br>                              *Plaintiff*,<br>v.<br><br>DANIEL S. WOOLDRIDGE AND KAYLA FAIRCHILD,<br><br>                              *Defendants*. | CASE NO. 6:22-cv-00055<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Liberty Insurance Company's Motion for Entry of Default Judgment Against Defendant Fairchild, Dkt. 15, and Motion for Judgment on the Pleadings, Dkt. 17. Liberty seeks a declaratory action that, under an insurance policy it issued to Defendants Daniel S. Wooldridge and Kayla Fairchild, it has no obligation to defend Wooldridge or indemnify him against any judgment in a lawsuit Fairchild brought against him, in which she seeks damages for alleged bodily injury. Liberty also seeks a declaratory judgment that it may immediately withdraw its defense of Wooldridge in such lawsuit. Because Defendant Fairchild was served with process but did not file a timely response to the Complaint, and the Court has ordered that the Clerk enter her default, Dkt. 14, the Court will grant Liberty's Motion for Entry of Default Judgment Against Defendant Fairchild. And because the insurance policy excludes coverage for bodily injury against an insured, the Court will grant Liberty's Motion for Judgment on the Pleadings.

**Default Judgment Motion Background and Analysis**

Under Rule 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or

1

otherwise, the clerk must enter the party's default." On September 30, 2022, Liberty filed its Complaint against Defendants Wooldridge and Fairchild. Dkt. 1. Liberty sought a declaratory judgment that, under an insurance policy issued by it to Defendant Wooldridge, it has no obligation to defend or indemnify him in a lawsuit brought against him by Defendant Fairchild. *Id.* On October 7, 2022, Defendant Fairchild was served with process, which included a Summons, by posting at her usual place of abode in Virginia. Dkt. 5. So she was served pursuant to Fed. R. Civ. P. 4(e)(1), which dictates that an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." *See* Va. Code § 8.01-296.

> Her Summons provided, in part:
>
> A lawsuit has been filed against you.
>
> Within 21 days after service of this summons on you (not counting the day you received it)— or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3)— you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:
>
> > E. Ford Stephens
> > Christian & Barton, LLP
> > 901 East Cary Street, Suite 1800
> > Richmond, Virginia 23219-4037
> > estephens@cblaw.com
>
> If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dkt. 4. Under Fed. R. Civ. P. 12(a)(1)(A)(i), "[a] defendant must serve an answer: within 21 days after being served with a summons and complaint." Twenty-one (21) days from October 7, 2022 was October 28, 2022. Defendant Fairchild did not file and serve an answer or motion under Rule 12 by October 28, 2022.

Liberty's counsel mailed Defendant Fairchild a Notice of Pending Proceeding pursuant to Virginia Code § 8.01-296, which included a copy of the pleadings, a notice that they are pending in this court, and a notice that upon the expiration of 10 days after giving the notice and the expiration of the statutory period within which to respond, Liberty could pray for an entry of a judgment by default. Dkt. 9. A certificate of such mailing was filed with the Court. *Id.*

Although Defendant Wooldridge filed a motion for extension of time to file his answer on October 26, 2022, Dkt. 7, which the Court granted, Dkt. 8, and he filed his revised answer on November 3, 2022, Dkt. 11, Defendant Fairchild has yet to respond to the Complaint. On December 8, 2022, the Court granted entry of default against Defendant Fairchild, pursuant to Fed. R. Civ. P. 55(a). Dkt. 14. On December 12, Liberty filed the present motion, Dkt. 15. There has been no response from Defendant Fairchild. As Defendant Fairchild has failed to respond after several months, despite having ample notice, the Court finds that Defendant Fairchild is in default and will enter a default judgment pursuant to Fed. R. Civ. P. 55(b)(2).[1]

### Findings of Fact

A defendant in default concedes the factual allegations of the complaint. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). The following are the factual allegations in Liberty's Complaint, Dkt. 1 ("Compl.").

**A. The Homeowners Policy**

Fairchild and Wooldridge maintained a Liberty homeowners policy (the "Policy") as of May 9, 2020, the date in which the alleged events of the underlying lawsuit occurred. *Id.* ¶¶ 8,

---

[1] *See, e.g.*, *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421–22 (D. Md. 2005) ("The Fourth Circuit has a 'strong policy' that 'cases be decided on the merits,' but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party.") (internal citations omitted).

16; *see also id.* (Ex. 1) (the Policy). The Policy period extended from August 31, 2019 to August 31, 2020, on the insured location of 109 Woodville Drive, Forest, Virginia. *Id.* ¶ 8; *see also id.* (Ex. 1). It includes an insuring agreement related to Coverage E – Personal Liability in Section II – Liability Coverages:

> If a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' to which this coverage applies, we will:
>
> 1. Pay up to our limit of liability for the damages for which the 'insured' is legally liable; and
>
> 2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the 'occurrence' equals our limit of liability.

*Id.* ¶ 9; *id.* (Ex. 1) at 18.

> The Policy, in general, provides exclusions with respect to Section II:
>
> 1. Coverage E – Personal Liability . . . do[es] not apply to 'bodily injury' or 'property damage':
>
>> a. Which is expected or intended by the 'insured' . . .;
>>
>> k. Arising out of sexual molestation, corporal punishment or physical or mental abuse[.]

*Id.* ¶ 10; *id.* (Ex. 1) at 18, 19. Further, the Policy includes exclusions related to Coverage E – Personal Liability:

> 2. Coverage E – Personal Liability, does not apply to . . . [;]
>
>> f. 'Bodily injury' to you or an 'insured' within the meaning of part a. or b. of 'insured' as defined.

*Id.* ¶ 11; *id.* (Ex. 1) at 20. And the policy provides definitions for some of the terms at issue in these provisions:

4

> In this policy, 'you' and 'your' refer to the 'named insured' shown in the Declarations . . . .
>
> 'We,' 'us' and 'our' refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:
>
> 1. 'Bodily injury' means bodily harm, sickness or disease, including required care, loss of services, and death that results. . . .
>
> 3. 'Insured' means you and residents of your household who are:
>
>     a. Your relatives; or
>
>     b. Other persons under the age of 21 and in the care of any person named above. . . .
>
> 5. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
>
>     a. 'Bodily injury'; or
>
>     b. 'Property damage.'

*Id.* ¶ 12; *id.* (Ex. 1) at 8.

Fairchild and Wooldridge are the "named insured" in the Declarations to the Policy. *Id.* ¶ 13; *id.* (Ex. 1) at 3. And for Section II, Coverage E – Personal Liability, the Policy's occurrence limit is $300,000. *Id.* ¶ 13; *id.* (Ex. 1) at 4.

### B. The Underlying Lawsuit

Fairchild initiated a lawsuit on April 29, 2022 in the Circuit Court for Bedford County, Virginia, styled *Kayla Fairchild v. Daniel Scott Wooldridge* and assigned case number CL22001004-00 (the "Underlying Lawsuit"). *Id.* ¶ 14; *see also id.* (Ex. 2) (Underlying Lawsuit Complaint). As alleged in the Underlying Lawsuit Complaint, Fairchild and Wooldridge "were in an over 10 year relationship wherein they share four children together," and in this "tumultuous" relationship, the "parties often engaged in heated arguments." *Id.* ¶ 15; *id.* (Ex. 2) ¶¶ 1–2. On May 9, 2020, while "engaged in a heated argument," Wooldridge "negligently but unintentionally struck [Fairchild]

5

on her head near her ear canal, which led to unintentional and unforeseeable consequences that included [Fairchild's] need for extensive medical treatment." *Id.* ¶ 16; *id.* (Ex. 2) ¶ 3.

In the alternative, the Underlying Lawsuit Complaint alleges that Wooldridge, on May 9, 2020, "ASSAULTED AND BATTERED [Fairchild] with such a violent force that [Fairchild] was severely injured." *Id.* ¶ 17; *id.* (Ex 2) ¶ 4. It further alleges that he "grabbed [Fairchild] by the feet and dragged her down the stairs;" he "punched [her] on the left side of [her] head with such violent force that her inner ear was damaged, her eardrum ruptured, the jawbone was broken, and her ear was visibly damaged;" he "attacked [her] while their children watched;" he "kicked [her] repeatedly while she was on the ground attempting to protect herself;" he "shut [her] in a bathroom, pushed her in the bathtub, and continued to kick her;" and "[d]espite [her] pleas to stop, [Wooldridge] did not relent and continued his violent attack against her." *Id.* ¶ 17; *id.* (Ex. 2) ¶ 4.

Moreover, the Underlying Lawsuit Complaint alternatively alleges that on May 9, 2020, Wooldridge "FALSELY IMPRISONED [Fairchild] by locking [her] in the home and refusing to allow her to leave and receive necessary medical attention." *Id.* ¶ 18; *id.* (Ex. 2) ¶ 5. It alleges that he "locked [her] in their bedroom and refused to allow her to leave despite her repeated pleas to leave and get medical attention;" he "refused to allow [her] to go to the hospital for fear that the violent attack may be reported; and she "was only able to leave after [he] fell asleep and she escaped through a bathroom window, after which [he] chased her once he awoke and realized she had escaped." *Id.* ¶ 18; *id.* (Ex. 2) ¶ 5.

Additionally, the Underlying Lawsuit Complaint alleges that "[a]s a result of these actions, [Fairchild] received medical attention from Lynchburg General Hospital, the University of Virginia Medical Center, and Blue Ridge ENT." *Id.* ¶ 19; *id.* (Ex. 2) ¶ 6. Through this medical

6

attention, "she received a cochlear implant to repair the completely ruptured eardrum, three prosthetic bones were placed in her ear, and a skin graft was placed on her ear to replace the visible damage. *Id.* ¶ 19; *id.* (Ex. 2) ¶ 6. Thus, the Underlying Lawsuit Complaint alleges that, "[a]s a result of these actions, [Fairchild] was caused to incur substantial medical expenses due to medical appointments, medical surgery, psychological treatment from the trauma associated with the incident, and will receive substantial future medical expenses from continued necessary physical and mental treatment that directly result from the incident." *Id.* ¶ 20; *id.* (Ex. 2) ¶ 7. Fairchild sought from Wooldridge "an amount of three hundred thousand dollars ($300,000.00) with interest from May 9, 2020 for [his] actions, any reasonable attorney's fees, and any and other such relief as the Court may determine just." *Id.* ¶ 21; *id.* (Ex. 2) at 3.

After "Wooldridge tendered to Liberty his defense in the Underlying-Lawsuit Complaint," Liberty began defending him "in the Underlying Lawsuit under a full and complete reservation of its rights under the Policy and/or Virginia law to disclaim any and all coverage under the Policy and/or Virginia Law to disclaim any and all coverage under the Policy for the Underlying Lawsuit and withdraw its defense of Wooldridge." *Id.* ¶ 22. Liberty now seeks a declaratory judgment that, under the insurance policy it issued to Wooldridge and Fairchild, it is under no obligation to defend or indemnify Wooldridge against any judgment in the Underlying Lawsuit, and Liberty may immediately withdraw its defense of Wooldridge in the Underlying Lawsuit. Dkt. 17. For the following reasons, the Court will grant this declaratory judgment.

## Declaratory Judgment Analysis

"'[A] default is not treated as an absolute confession by the defendant of his liability and the plaintiff's right to recover,'" and instead the Court must "determine whether the well-pleaded allegations in [Liberty's] complaint support the relief sought in th[e] action." *Ryan*, 253 F.3d

778, 780 (internal citations omitted). The Court thus evaluates Liberty's request for declaratory judgment against the standards of Fed. R. Civ. P. 12(b)(6). *See, e.g.*, *Safe Auto Ins. Co. v. Spruill*, No. 1:19-cv-01618 (AJT/IDD), 2020 WL 5949648, at *3 (E.D. Va. Sept. 4, 2020) (Magistrate Judge issuing a Report and Recommendation recommending a declaratory judgment pursuant to the plaintiff's request). In doing so, the Court may consider documents attached to the pleadings and incorporated by reference. Fed. R. Civ. P. 10(c).

Under Virginia law, the burden to establish coverage under a policy's terms rest on the insured. *Bituminous Cas. Corp. v. Sheets*, 389 S.E.2d 696, 698 (Va. 1990).[2] And "[t]he obligation to defend arises whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy." *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990). But "if it appears that the insurer would not be liable under its contract for any judgment based upon the allegations, 'it has no duty even to defend.'" *Id.* (quoting *Travelers Indem. Co. v. Obenshain*, 245 S.E.2d 247, 249 (Va. 1978)).

To determine whether there is a duty to defend, "the district court need not make independent findings as to what actually occurred . . . but rather need only decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the

---

[2] In determining choice of law when a case is before a federal district court based on diversity of citizenship, the court applies the choice-of-law rules of the forum state, which, in this case, is Virginia. *See, e.g.*, *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Virginia law dictates that "the interpretation of [an] insurance contract depends upon the place where the contract was made." *Occidental Fire and Cas. Co. of N.C. v. Bankers and Shippers Ins. Co. of N.Y.*, 564 F. Supp. 1501, 1503 (W.D. Va. 1983) (internal citations omitted); *see also Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993); Va. Code § 38.2-313. Thus, Virginia law applies here, as the Policy indicates it was delivered to Defendants at a Bedford County, Virginia address, and the Policy provides insurance with respect to the ownership, maintenance, or use of their property in Virginia. Compl. (Ex. 1).

exclusion." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004).[3] In doing so, Virginia courts apply the "eight corners rule," comparing the "four corners" of the underlying complaint to the "four corners" of the policy when determining whether the underlying allegations come within the policy's coverage. *AES Corp. v. Steadfast Ins. Co*, 725 S.E.2d 532, 535 (Va. 2012); *CACI Intern., Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 155 (4th Cir. 2009).

### A. The Policy Has No Coverage for the Underlying Action

Wooldridge is the insured being sued, but if Fairchild obtains a judgment against him in the Underlying Lawsuit on which she cannot collect, she could assert an action against Liberty for the amount of such judgment, not exceeding the Policy's coverage limits. *See* Va. Code § 38.2-2200. The burden rests on Wooldridge or Fairchild, as the insured, to show that the Underlying Lawsuit Complaint alleges facts and circumstances that, if proved, would fall within the Policy's covered risk. The insured cannot meet this burden.

"Contracts of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, we are bound to adhere to their terms." *Pilot Life Ins. Co. v. Crosswhite*, 145 S.E.2d 143, 146 (Va. 1965); *see also Gay v. Am. Motorists Ins. Co.*, 714 F.2d 13, 16 (4th Cir. 1983) ("Virginia law recognizes and gives literal effect to the policy language that limits coverage."). And here, the Personal Liability coverage does not apply to "bodily injury," to a named insured. Compl. ¶ 11; *id.* (Ex. 1) at 20. Because the Underlying-Lawsuit Complaint seeks damages for alleged "bodily injury" to Fairchild, the Policy has no coverage for the underlying suit. *See Traveler's Prop. Cas. Ins. Co.*

---

[3] "Although an insurer's duty *to indemnify* will depend on resolution of facts alleged in the complaint, no such factfinding is necessary if there is no duty *to defend* because the allegations, even when taken as proved, would fall outside the policy's coverage." *Id.*

*v. Dean*, No. 1:10cv91 (LMB/JFA), 2010 WL 11569537 (E.D. Va. Sept. 1, 2010); *Gov't Employees Ins. Co.*, No.1:10cv294 (LMB/JFA), 2010 WL 11566020 (E.D. Va. Oct. 18, 2020).

In Wooldridge and Fairchild's Policy, the named insured are excluded from Coverage E Personal Liability Coverage based on bodily injury. Compl. ¶ 11; *id.* (Ex. 1) at 20. Because the Underlying-Lawsuit Complaint seeks damages for Fairchild's alleged 'bodily injury,' and Fairchild is a named insured, *id.* ¶ 13; *id.* (Ex. 1) at 3, the Policy does not cover the Underlying Lawsuit. Thus, Liberty owes no defense or indemnity coverage to Wooldridge. The Court will therefore grant Liberty's request for declaratory judgment that Liberty, under the Policy, has no obligation to defend or indemnify Wooldridge in the Underlying Lawsuit. The Court will declare that Liberty may immediately withdraw its defense of Wooldridge in the Underlying Lawsuit.

## Conclusion

The Court will enter a default judgment against Fairchild. The Court will enter a declaratory judgment against Fairchild and Wooldridge:

a. Declaring Liberty has no duty or obligation to defend Wooldridge in the Underlying Lawsuit;

b. Declaring Liberty has no duty or obligation to indemnify Wooldridge against any judgment in the Underlying Lawsuit;

c. Declaring Liberty may immediately withdraw its defense of Wooldridge in the Underlying Lawsuit; and

d. Granting Liberty its costs as permitted by Fed. R. Civ. P. 54(d)(1).

The Clerk of the Court is directed to send a certified copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this **20th** day of April, 2023.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE

11